**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| KELLY WESELMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION FILE |
| ) | NO. 1:21-CV-5195 SCJ - RDC |
| v. ) | |
| ) | |
| WELLSTAR HEALTH SYSTEM, INC., ) | |
| ) | JURY TRIAL DEMANDED |
| Defendant. ) | |

**COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES**

Plaintiff Dr. Kelly Weselman ("Plaintiff" or "Dr. Weselman") files this Complaint for Equitable Relief and Damages against Defendant Wellstar Health System, Inc., ("Defendant" or "Wellstar") showing the Court as follows:

**INTRODUCTION**

Dr. Weselman, a physician with Wellstar, brings claims of gender-based pay discrimination against Defendant pursuant to the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"), and the Georgia Sex Discrimination in Employment Act, O.C.G.A § 34-5-1 *et seq*. ("GSDEA").[1] At all times relevant to this dispute, Wellstar

---

[1] Dr. Weselman filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq*. ("Title VII"), based on the same set of facts asserted herein. Dr. Weselman

failed to compensate Dr. Weselman for substantial work she performed for Defendant, work for which her male counterpart received compensation. Dr. Weselman seeks injunctive and equitable relief, back pay, liquidated damages, attorney's fees, and expenses of litigation to remedy these civil rights violations.

## PARTIES

1. Plaintiff Dr. Kelly Weselman is a resident of Fulton County, Georgia and submits herself to the jurisdiction of this Court.

2. Defendant Wellstar is a nonprofit hospital corporation formed under the laws of the State of Georgia and is subject to the jurisdiction of this Court.

3. Wellstar may be served with process through its registered agent, Leo E. Reichert, 793 Sawyer Road, Marietta, GA, 30062.

4. Dr. Weselman is a current employee of Wellstar.

5. Dr. Weselman is an "employee" within the meaning of the EPA and the GSDEA.

6. Wellstar is an "employer" as defined by the EPA and the GSDEA.

---

intends to amend this Complaint to add her Title VII claims as soon as the EEOC releases her Notice of Right to Sue.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Dr. Weselman's EPA claim under 28 U.S.C. § 1331 & § 1343(a)(4). This Court has supplemental jurisdiction over Dr. Weselman's GSDEA claim pursuant to 28 U.S.C § 1367(a) because that claim is so related to her federal claim that it forms part of the same case or controversy.

8. Venue is proper in this district and division under 28 U.S.C. § 1391 because Wellstar conducts business in this district and division and the unlawful actions were committed within the Northern District of Georgia.

## STATEMENT OF FACTS

9. Dr. Weselman began her employment with Wellstar in June 2010 as a rheumatologist in Wellstar's Smyrna rheumatology practice. From the outset of her employment, Dr. Weselman also served as the rheumatology practice's "Physician Lead."

10. Physician Leads perform operational, human resource, and marketing functions for the separate specialties within Wellstar, in addition to their ordinary medical practice.

11. Throughout her tenure at Wellstar, Dr. Weselman is and has been routinely recognized by other physicians, office managers, and other administrators as the Physician Lead over the Smyrna rheumatology practice.

12. Dr. Weselman's Physician Lead duties include, but are not limited to: (1) partnering with the Office Manager to manage staff members, including hiring and disciplining; (2) handling practice issues raised by the Office Manager and Director of Practice Operations; (3) serving as the point person for outpatient infusion center issues and lab issues; (4) overseeing the practice responses to patient complaints; (5) meeting with Human Resources to discuss staff turnover; (6) coordinating an initiative to move all rheumatology offices to an Epic infusion order platform; (7) creating the rheumatology practice brochure; (8) overseeing the hiring of new rheumatology physicians; (9) counseling physicians through practice shortcomings; (10) designing and updating the practice's workflow; and (11) attending primary care service line meetings as the rheumatology practice representative.

13. Beginning in 2016, Dr. Weselman's Physician Lead responsibilities increased as the Smyrna rheumatology practice sought to hire a third doctor. Dr. Weselman oversaw the recruiting process. Since 2016 Dr. Weselman has been

responsible for recruiting and replacing three doctors within her practice and, beginning in 2017, her practice has had the patient caseload of three physicians.

14. From 2016 to early 2021, Dr. Weselman estimates she spent six to eight hours a week on Physician Lead duties. Dr. Weselman continues to serve as Physician Lead, and she now spends an average of four hours a week on such duties.

15. Dr. Weselman has never received any compensation for her efforts in the Physician Lead role.

16. Not only has Dr. Weselman never received compensation for her Physician Lead duties, but she also often earned less than her peers because she could not see patients while she engaged in Physician Lead tasks.

17. In February 2019, Dr. Weselman began making internal complaints about Wellstar's failure to compensate her for her role as Physician Lead.

18. As a result of Dr. Weselman's complaints, the Director of Physician Operations requested that Dr. Weselman be paid for her Physician Lead duties.

19. Wellstar took no action in response to the Director's request and refused to pay Dr. Weselman for her Physician Lead duties.

20. Instead, Wellstar simply told Dr. Weselman that Physician Lead duties were not compensable.

21. In January 2021, Dr. Weselman attended a meeting wherein she learned that her counterpart in the Marietta rheumatology practice, Dr. Mohammad Kamran, was being compensated for his role as Physician Lead in that office. Dr. Kamran told Dr. Weselman that Wellstar had been compensating him for Physician Lead duties for at least the previous two years.

22. Dr. Kamran is a man.

23. Dr. Kamran's practice had three physicians until 2020, when it grew to four physicians.

24. In other words, while Dr. Weselman performs the Physician Lead role without compensation, her male counterpart within the rheumatology practice is paid for the same duties.

25. Although they operate in facilities that are substantially the same size and hold positions with the same responsibilities, Dr. Weselman earns less than Dr. Kamran annually.

26. When Dr. Weselman learned that Dr. Kamran was being paid for his Physician Lead duties, she complained to Wellstar again, specifically to Teryl Brand, Director of Practice Operations, and Alan Muster, Senior Vice President, Specialty Division.

27. During Dr. Weselman's conversation with Dr. Muster, he acknowledged that Dr. Kamran had been compensated for his role as Physician Lead while Dr. Weselman had not.

28. Upon information and belief, other male Physician Leads are compensated for their extra duties.

29. Wellstar has yet to offer Dr. Weselman full payment for her Physician Lead duties or payment at the same level as Dr. Kamran.

30. In January 2021, Dr. Kamran was promoted to "Specialty/Regional Lead" over Wellstar's rheumatology practice without any sort of job opening notice or application process.

31. Dr. Weselman is equally or more qualified than Dr. Kamran for the "Specialty/Regional Lead" role, yet she was not given the opportunity to apply for the position.

32. On March 31, 2021, Wellstar formally offered Dr. Weselman a Physician Lead position.  However, the accompanying agreement only allowed for two to four hours a month of compensable time to perform Physician Lead functions. Dr. Weselman spends one full day most weeks on Physician Lead duties; accordingly, she rejected Wellstar's offer.

33. To date, Dr. Weselman continues to perform Physician Lead duties without compensation.

34. The unlawful, discriminatory actions by Wellstar and its agents and employees were taken during and within the scope of their agency and employment with Wellstar.

35. Because of Wellstar's unlawful, discriminatory actions and practices, Dr. Weselman has lost and continues to lose wages.

## COUNT I
## VIOLATION OF THE FEDERAL EQUAL PAY ACT

36. Dr. Weselman hereby realleges all preceding paragraphs of this Complaint as if each paragraph had been fully and completely restated herein.

37. Wellstar's actions have deprived Dr. Weselman of equal pay for equal work in violation of the Equal Pay Act, 29 U.S.C. § 206(d).

38. Wellstar discriminated against Dr. Weselman by paying her less than her male peers for performing substantially similar work in violation of the EPA.

39. As a direct and proximate result of Wellstar's actions, Dr. Weselman has suffered lost wages.

40. Wellstar's actions in paying lower wages to Dr. Weselman than to men performing substantially similar or less work is intentional, with malice, and/or with reckless indifference to Dr. Weselman's rights.

41. Dr. Weselman has suffered damages and is entitled to recover actual and liquidated damages against Wellstar.

## COUNT II
## VIOLATION OF THE GEORGIA SEX DISCRIMINATION IN EMPLOYMENT ACT

42. Dr. Weselman hereby realleges all preceding paragraphs of this Complaint as if each paragraph had been fully and completely restated herein.

43. Wellstar's actions have deprived Dr. Weselman of equal pay for equal work in violation of the GSDEA, O.C.G.A. § 34-5-1 *et seq*.

44. Wellstar discriminated against Dr. Weselman by paying her less than her male peers for performing substantially similar work in violation of the GSDEA.

45. As a direct and proximate result of Wellstar's actions, Dr. Weselman has suffered lost wages.

46. Wellstar's actions in paying lower wages to Dr. Weselman than to men performing substantially similar or less work is intentional, with malice, and/or with reckless indifference to Dr. Weselman's rights.

47. Dr. Weselman has suffered damages and is entitled to recover monetary damages, including all unpaid wages and reasonable attorney's fees under O.C.G.A. § 34-5-5.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Dr. Weselman respectfully invokes the powers of this Court and prays for the following:

a) That the Court grant trial by jury;

b) That the Court permanently enjoin Wellstar from discriminating against Dr. Weselman in violation of the EPA and the GSDEA;

c) That the Court issue a declaratory judgment that Wellstar's acts, policies, and procedures complained of herein violated Dr. Weselman's rights to be free from discrimination as provided by the EPA and the GSDEA;

d) That Dr. Weselman recover from Wellstar all amounts available under the EPA and the GSDEA, including but not limited to, compensatory and consequential damages, back pay, and liquidated damages;

e) That the Court award pre-judgment and post-judgment interest to Dr. Weselman on any of the above amounts;

f) That Wellstar be ordered to pay to all of Dr. Weselman's costs and attorney's fees of this action;

g) That the Court grant such other and further equitable and monetary relief as it deems equitable, just, and proper.

Respectfully submitted this on this 21st day of December, 2021.

**LEGARE, ATTWOOD & WOLFE, LLC**

*s/Eleanor Mixon Attwood*
Eleanor Mixon Attwood
Georgia Bar No. 514014
emattwood@law-llc.com
Marcela X. Johnson
Georgia Bar No. 32887
mxjohnson@law-llc.com

Decatur Town Center Two
125 Clairemont Avenue, Suite 380
Decatur, Georgia 30030
Telephone: (470) 823-4000
Facsimile: (470) 201-1212

11